All right, the next case is numbers 20-3434 and 20-3492, FDRLST Media LLC v. National Labor Relations Board. Mr. McClain. Good morning, Your Honors. May it please the Court, my name is Jared McClain with the New Civil Liberties Alliance on behalf of FDRLST Media. If I may, Your Honors, reserve three minutes for rebuttal. Granted. This case should not be here today, Your Honors, except for the fact that NLRB ignored several constraints on its enforcement authority. The case was lawless from its inception when NLRB expanded its subject matter jurisdiction and allowed a complete stranger to FDRLST to file an unfair labor charge. Reversing that threshold jurisdictional issue disposes of all the weighty constitutional issues that that error caused. Where does the statute say a random citizen can't bring to the Board's attention what that citizen believes to be an unfair labor practice? Reading Section 10B as a whole in context with the other provisions, the aggrieved person language that is included in the proviso in the statute of limitations section. The exception for military people. The exception for military people. We're not going to read the exception for military people to govern the entire statute. That's sort of a statutory interpretation 101. The statute doesn't say that only an aggrieved person can bring a charge. Well, the statute speaks in passive voice. And dating back to Chief Justice Marshall all the way up through the 2019 decision from the Supreme Court in Fourth Estate, the court has looked to the context and the surrounding provisions of the statute to read the statute in harmony to identify a particular actor when the Congress speaks in a passive voice. And here when you're applying the distributive phrasing canon, when you look at the person aggrieved thereby files such a charge, the terms thereby and such relate back and help identify the particular actor who Congress. That tells you who's subject to the statute of limitations exception. The statute of limitations exception is a tiny piece of the puzzle. It's not the statute writ large. Since the National Labor Relations Act was passed almost 100 years ago, parties have brought to the board's attention what they perceive to be unfair labor practices, and the Supreme Court has allowed those to go forward the same way a citizen can call a police officer and say, I think you ought to look into something. And the person here, the complainant, he's not even a party to the case. So I'm at a loss to see where you're going with any of these jurisdictional arguments or standing arguments. This isn't even a court proceeding. It's an agency proceeding. So I'm at a loss on all of that. He's not a party to the case. So why is standing even an issue? Well, the Supreme Court in NLRB versus Sears and in the Schofield decision both said that the charging party is a party to the case, and if the NLRB decides not to pursue a charge and dismisses the charge, he then becomes an aggrieved party who is allowed. That's if they don't pursue the charge. Here they pursued the charge. But in this case, I mean, where is the lawyer's name? I don't even remember his name. Bill Fleming? Yeah. Where's his name in the caption? Have you ever seen a case in a court of law where someone was a party to the case and their name didn't even appear in the caption? But he would be permitted to be a party. He's not a party. But Congress has permitted him to be a party, and it could not have done that if he didn't have to meet the threshold standing requirements. If you look at the Supreme Court's decision in Gladstone, there is some other case. If Fleming were a party and you think there's some constitutional infirmity in that, then you can litigate that case. He's not a party in this case. Counsel, I didn't think you were making it. Are you pressing an Article III standing argument? Thank you, Your Honor. It's not actually an Article III standing requirement. As Lexmark clarified, the zone of interest inquiry is a tool of interpretation that allows you to look at a statute and see who Congress intended to benefit from this statute and who allowed to file a charge. And so when you look at the Title VII cases and the Gladstone decision, some of those cases that someone filing a charge with the EEOC, and then if the case gets dismissed, they're allowed to file in court just as in here. And the Supreme Court looked at that language and said, even though there's passive voice and this provision doesn't specifically say it applies only to aggrieved persons, we're going to read the statute in context and these other provisions that do refer to aggrieved persons, and we're going to determine that the passive voice identified the particular actor who may file a charge with the agency to be an aggrieved person. So it's not an Article III question. We're not saying that Joel Fleming needed to have Article III standing before the board. We're saying the way that Congress structured the statute and assumed that the- Is Fleming a stranger? Fleming is a complete stranger to the action and NLRB- And in Indiana Electric and Michigan Electric, they said a stranger could maintain this action. And subsequent cases from the Supreme Court and the courts of appeals have said the same thing and we've said a stranger can maintain this action. Yes, Your Honor. The holding of Indiana and Michigan, as I hold it, that charge was filed by a union, and the holding of that case was that the dubious or improper motives of a charging party do not defeat their ability to file a charge. And then the court did go on and dictate in Indiana Electric and say any stranger to a labor relationship could file a charge, but for the reasons that Justice Scalia set out in the Thompson decision, that was dicta and it wasn't pertinent to the court's holding. And that decision also issued before the Taft Amendments to the NLRA, which put the person aggrieved language into the statute. And if you look at the legislative history there, there's no- You're talking about the 1947- The 1947 Taft Amendments, correct, Your Honor. There is nothing that suggests that Congress was intending to impose, to create an exception, not just for military members but only military members who are aggrieved. And if that was what Congress was trying to do, that's not the natural way that you would phrase that provision. Congress assumed- They could have amended the beginning of that paragraph and just saying not any person but any aggrieved person, and they did not do that. You're right, Your Honor. They could have amended it, but there are still tools of statutory interpretation available to the court to identify who Congress intended to mean when it spoke in that passive voice. And the amendment shows the way that that language is phrased, person aggrieved thereby who files such charge, suggests that Congress was already assuming that a charge could only be filed by a person who was aggrieved, and they believe that that's how the statute was- that worked. And the cases from this court that have adopted the holding of Indiana and Michigan, those cases involved an association of employers who were negotiating a labor agreement, and they involved unions. None of these cases that the NLRB relies on have included a situation like this where a complete stranger to a labor agreement filed a charge. That sounds like a good argument for the NLRB abusing its discretion or making a really foolish decision to pursue this matter, but I don't know. I think I'm only speaking for myself. I think you're wasting your time on issues that really aren't the important issues in the case, but that's just me. And I don't know why your briefing barely got into what I view to be the crux of the case. Was this a threat? There are important First Amendment concerns in this case. You spent precious little time in your brief on that, and now you're not even talking about an argument. But you can continue to argue jurisdiction, and, of course, in venue, you complain about venue. You didn't even file a motion to change venue. We filed an objection to the venue, and we filed a motion- We tried to get the case dismissed. You didn't say, please move the case to D.C. or Delaware, did you? We objected. Did you file a motion to transfer venue to D.C. or Delaware? No, we filed a motion to dismiss, and we raised venue. But just as the zone of interest inquiry doesn't derive from Article III, neither does personal jurisdiction. In the railroad board case from Justice Brandeis, it also involved a federal agency with nationwide enforcement jurisdiction that was trying to assert jurisdiction in one of its divisions that did not have any relationship to the charge or to the parties. And the Supreme Court, in that case, said that there was no basis to assume that Congress would have departed from the longstanding principle that a region is bound by its physical limitations. Did that predate the NLRA? It did predate the NLRA. But in OmniCapital, which was, I believe, 1978, Your Honor, cited favorably to the railroad labor board case and said that there's a default presumption that when boundaries are drawn, the sovereign is limiting the exercise of its power to the borders that it has drawn, and you need a strong showing from Congress that it chose to depart from that default rule. And there's been no showing by NLRB in this case. And moving on to the First Amendment issues in this case, Your Honor, a lot of the complications in the First Amendment issues, just like the personal jurisdiction, which arose because Joel Fleming filed the charge in the wrong division because he had no idea where Federalist Media was located, there's no complaint in this case from anyone who has any relationship to Federalist Media. And typically in these cases, when you're reviewing for substantial evidence, there's been a charge filed by an aggrieved labor union or an aggrieved employee, and under Gizel Packing, the Supreme Court has said that you have to look to the context of that particular labor relationship to see if the statement that was made was threatening. And we know from the Supreme Court's decision in Watts that in order to lose First Amendment protection, a threat has to be a true threat. And in Watts, the Supreme Court looked to see the venue in which it was made, it was made in public, and that the audience laughed. And that's exactly what happened here. Ben Domenech wrote a tweet on Twitter in the midst of an ongoing public discussion about a matter of public interest, and the response were jokes about Negroni Hour. And everybody who viewed the tweet knew that it was a joke. And NLRB put on no evidence to the contrary. They subpoenaed four employees from Federalist and then didn't bother bringing any of them to testify and said we can just look at the face of this tweet and determine that what Federalist employees thought was completely irrelevant. And isn't that your stronger argument on the merits of the substantial? Well, Your Honor, I particularly like the jurisdictional issues, but this court can also resolve on the First Amendment issues because this... We can resolve on the factual finding. On substantial evidence, the lack of any evidence that NLRB adduced at the hearing, the court could resolve it on that as well because NLRB, the only evidence that they put forward was that, I see I'm out of time. If I could just finish, but the only evidence that they put forward was that they believed that Federalist media is an anti-union publication, and they thought that that was enough that any anti-union statement made by a publisher of Federalist constituted a threat per se. And that's not what gizzle packing requires, and the First Amendment requires strict scrutiny in these circumstances and requires NLRB to consider the context in which the statement was made and how an objective Federalist employee would have considered that joke when it was made. And you're saying their decision that it was a threat did not take into account all the circumstances, the context that was essentially viewed... Correct, Your Honor. ...myopically. And we think that they committed an error of law because they said all that stuff is irrelevant. They said that they don't even have to consider it, and that's contrary to Supreme Court doctrine and the First Amendment. Okay. All right, we'll hear you on rebuttal. Thank you, Mr. McClain. Thank you. Mr. Jost. Good morning, Your Honors. May it please the Court. My name is Micah Jost for the Labor Board. I'd like to begin by correcting a point of potential confusion. The Board itself did not rely on any evidence regarding the anti-union or pro-union stance of this employer. As the Board clearly explained in footnote 4 of the decision, it did not rely on evidence that the Respondent's website hosts editorials about unionization. So that is not part of the Board's analysis here. What the Board found is that the company's executive threatened employees by tweeting, FYI, at Federalist, first one of you tries to unionize, I swear I'll send you back to the Solomons. We're familiar with the facts, Counselor. And you reached that determination based on the referral of someone who has no employment, contractual, or other harm-based interest to this matter. So help us understand, just to put this jurisdictional question in context, who are the persons aggrieved that the statute refers to? Is it your argument that they are only members of the military and that's the only time that we ever consider the language persons aggrieved? In the context of Section 10B, that's right, Your Honor. So Congress wrote an exception for the timeliness of these complaints, not just for military members, but for military members who are also personally aggrieved. Why would they write a statute that way as opposed to just saying military members or if they were only specifically concerned, in your best reading of the statute, with military service members who suffered a personal harm? All other military members, sorry, you have to meet the normal threshold of six months. Is that your interpretation? Well, Your Honor, I begin by noting that, to my knowledge, there is absolutely nothing in the legislative history that illuminates that. Well, but don't. Let's stick with the text of the statute if we could, thanks. Certainly. The text of the statute, using the basic last antecedent principle, the plain language of it shows that the reference within exception to the proviso to aggrievement and such ULP refers to essentially when Congress adds that text in the exception, it's referring to the proviso, not referring back to language that's many lines earlier. Right, right. So the exception refers to military members who were personally aggrieved in that, and all other military members are subject to the same limitation. Right, and as we explained in our brief, Your Honor, the purpose that Congress had in adding a short statute of limitations of six months was to promote repose in these cases. So at the same time, Congress was legislating in the aftermath of World War II when my understanding is somewhere around 10% of the U.S. population was involved in military service. So it was concerned with ensuring that people who served, who were directly affected by a ULP, would not lose their right to pursue that case. At the same time, with millions of people coming out of military service, Congress clearly did not intend to allow just anyone to file an unfair labor practice many months or even years after the fact simply because they had been in the military. And that's helpful, counsel. Has any court followed that reading and considered a person who's wholly unaffected by the alleged practice? And I understand there's been cases where they were tangential, quasi-employee relationships, labor unions, things like that. But is there something that mirrors the facts of this case that you could point us to? Your Honor, in our brief, we note cases where it's not necessarily clear from the record what the charging party's relationship was, in part because Supreme Court and this Court's precedent has been crystal clear for many decades that it doesn't matter. So this is not an issue. I understand that, counsel. But Indiana was the predecessor before the statute was amended. Our two cases then cite Indiana without analysis. So I don't know that that's crystal clear. But I appreciate the answer, and I'll let you continue. Well, I would just note, for example, the cases that we cite like Bagley Produce. That's a case where a nonprofit organization that had no obvious connection to the dispute filed the charge. We cite a case where the discriminatee's mother filed the charge. The Washougal Woman Mills case from 1940. I could find nothing in that decision that explained how the union could have possibly been aggrieved. And, indeed, the employer argued that it was not a real party in interest and therefore did not have standing, and the Board rejected that argument. Mr. Jost, I don't know if this is the case in all the cases that are out there involving the Board, but there are certainly a large number of cases that follow a typical pattern, which is some form of labor dispute or even strife between workers and a company. And they're sort of bickering with each other, or there's some tension, and then the Board gets involved and investigates. I can't really think of any cases. Are there any cases out there like this where you've essentially got a citizen who, you know, drops a dime and has a problem with a tweet? And, I mean, this just seems like such an unusual case that the Board would pursue this on so many levels, considering that it's a tweet, considering that there was no history of labor strife at the Federalist. It's not a manufacturing plant or anything like that. I understand that's not essential, but it might be one piece of the puzzle. And the fact that this is a very, very small company, are there any cases like this out there where the Board pursued an action? Yes, Your Honor. To the question of whether the Board can find a threat in a context where there has not already been labor strife, or indeed even where the employer may not be aware of any union organizing, there's an entire body of case law dealing with, for example, handbook rules, where an employer may be enforcing rules that limit employees' Section 7 rights. Those rules are unlawful, even if there has never been organizing and never will be organizing. One of the many cases involving that appears in our brief. Component bar products, 364 NLRB number 140. But to the broader point of... I'm sorry, that's an employer handbook case? That's right, Your Honor. An employer can have rules which are unlawful on their face, regardless of whether there's any prior activity. All right, but that's not analogous to this case. Are there any cases involving companies? Cite some cases for me involving companies with fewer than 50 people where the Board determined that the employer made a threat. So Miller Electric is a perfect example of that, in my view. That's a case in which there's a small electrical contractor. I believe he had three permanent employees. He took on several additional employees to carry out a project. The employer was pro-union, subjectively. His father had been a teamster steward for 30 years. He supported unions. He told an employee, I support unions, but if I have to recognize a union, I am going to close my business. The employee was not coerced. The employer had no subjective intent to threaten, but the Board found an unlawful threat because of the reasonable tendency, the objective reasonable tendency that that statement would have to coerce. Well, any... Right. Same standard. All right. So any... In that context, any rational employee would conclude that there's a potential risk, a serious risk, that the business would, in fact, close, right? How do you... That's not right, actually, Your Honor. No? The administrative law judge specifically found that this was mere bluster and that this was not actually likely to happen, that the nature of the project that the employer had just started made it clear that he would not shut down if there was a union vote. So it was not a threat, then? The fact that a threat is made in blustering terms, the fact that a threat might have sort of... But if it's bluster, it's not a threat. If it's a joke, it's not a threat. Those are inconsistent. Your Honor, this Court's precedent recognizes that the categories of joke and threat are not mutually exclusive. A statement by an employer who has the power to affect your job, to fire you, to demote you, to change your job duties in an adverse way, when an employer jokes about adverse action against an employee based on their union activity, the Board's reasonable finding can be that that statement would have an objective tendency to coerce. That's what the Stein-Seal case from this Court clearly said. If it's objectively going to coerce, then it's not a joke. It's more than a joke. It's a threat. Your Honor, again, I don't think that the cases reflect a clear line distinguishing jokes from threats. And I think that plenty of cases, including in the criminal law context, recognize that you can have statements that are outrageous, that are outlandish, that don't even necessarily make perfect sense. And yet, if a reasonable person viewing it would take it seriously as indicating the potential for... All right, I guess we have a disagreement about that because, to me, a joke is not something anyone would ever take seriously. You think, I guess, otherwise, which is fine. But where is the evidence in this record that the ALJ or the Board considered the context in which this tweet was issued? All of the facts and circumstances surrounding the tweet, including when it was made, how many people work at the company, all that sort of thing. It seems like a pretty thin record as to whether the tweet was contextualized. Your Honor, it was a stipulated record, so the parties were able to enter the evidence that they thought, in the form of the stipulation, was relevant. In addition, the employer tried to put in affidavits which provided only one element of supposed context, and that element was the subjective intent of the employer and the subjective... No, the law is clear that the subjective intent doesn't matter. Your brief was strong on that. But I'm asking where, please point to the ALJ's opinion, the Board's opinion, to give us some confidence that this tweet was contextualized and not viewed in a vacuum. Sure, Your Honor. The relevant context is discussed at footnote four of the Board's decision in the first page, and the relevant facts that it took into account were essentially these. A facially clear threat of reprisal for union activity issued by a supervisor who had power over employees' jobs and actually witnessed by those employees. Under Board precedent, nothing more is required to find a threat. That's it. That's it right there? Footnote four, that's it? The stipulation, I mean, the stipulated facts, Your Honor, are discussed at page three through four of the ALJ's decision, and those facts are also part of the Board's decision. But I would submit that there are no facts, there's no relevant context provided in that area that detracts from the facially clear threat. And, again, that's consistent with cases like Miller Electric, where you have a clear threat and there is no additional context that detracts from that finding. And it's issued by an employer. I guess I'm still having trouble understanding how you can analogize the threat. If you vote to unionize, I'm closing my business. That seems pretty direct, pretty clear, pretty understandable. I don't know how you analogize that to a tweet that says, I'm going to send you back to the salt mine. Which Federalist employee was working in a salt mine? Your Honor, in the cases we point to, the reference to a sacrificial lamb, for example. Were any Federalist employees working in a salt mine? Certainly not, Your Honor. Okay, so how could the tweeter send somebody back to a salt mine if they were never there in the first place? Your Honor, precedent dealing with threats. I'm not asking about the precedent. I'm asking about the facts here and the context of this case. How could he send someone back to a salt mine they were never in? Your Honor, as the Board explained, salt mine is understood universally in the English language as an idiom referring to returning to something you would rather not do. So this could easily be interpreted, for example, as if you unionize, I will send you back to less pleasant work. I will change the terms and conditions of your employment. All right, then what did the ALJ determine was the less pleasant work that they were engaged in, that they would be punished with? Was it writing more articles per month or per week? What were those unfavorable working conditions that were going to be reimposed upon these employees? The threat of unspecified reprisals. There's a longstanding body of law that recognizes that a threat does not need to spell out the specific ways in which the employee will be harmed in order to threaten in a serious way. Here, where we have a statement from the employer that it intends to take some form of reprisal, even using an idiom and nonliteral language, there's no reason that an employee would necessarily discount that clear threat. And it's not relevant what the actual reaction was of the employees? I understand that's not controlling, but I'm not sure I understand why that wouldn't be relevant. Well, I can begin just by telling you that this court's cases, Allegheny Ludlum, Gary Manufacturing, Steinsteel, Triangle Publications, all of those cases, Hedstrom as well, have universally stated, going back decades, that the subjective interpretation of the employee is not relevant. In the words of Triangle Publications, that no one was in fact coerced or intimidated, quote, is of no relevance. That is the standard that the board has always applied and that this court has upheld. The reason for that, again, is that the board is looking at the objective tendency of a statement to coerce. And I imagine that the board is not interested in bringing a parade of employees before their employer and allowing the employer to ask them, well, did you think that I was threatening you when I told you that you would lose your job, for example, or that I would close the plant? That sets up a situation where any reasonable employee would have a tendency to not speak as freely. And what we have instead is a test that this court has always upheld under which the board. But counsel, you have to keep shifting your analogies. I guess that's maybe where Judge Hardiman seems to be going and kind of picking up on what I started with earlier. You cite a host of cases that deal with employees, the proposition that you have jurisdiction to investigate conduct that's raised by a non-employee. And then you raise a bunch of cases that deal with specific threats to lose jobs, to have less desirable conditions and say that they apply to substantiate a charge regarding a joke. And it all comes together in a very creative and a novel interpretation of your power under the NLRA, one that it's just hard to square with how courts have always interpreted. So at some point it seems as though what you're asking for here is a new rule, one that creates or at least solidifies what you believe has always been your jurisdiction as a free-ranging entity that can consider the workplace conditions of employers across America and one that extends to expressions that are clearly understood by reasonable speakers of English as humor because they might have the potential to influence those employee relationships that, as we said, were not really employee relationships because they were brought by third parties. And if I'm understanding all of that correctly, there's also no authority that you can cite that mirrors that outcome. So what you're asking for is kind of a two-part new test that would sustain this case, but then, of course, I would assume solidify your broader powers in future investigations. Your Honor, with all respect, I don't understand how there's any new rule that the board is asking for here. But in any event, if the board were applying a new rule, it would be subject to Chevron deference because the board is interpreting its statute. But, again, what we have is – If the tools of Kaiser interpretation don't lead to an ordinary best meeting. I think that's clear, right? You don't get Chevron deference for something that isn't understood plainly in one direction. You can't wave a flag of ambiguity after Kaiser. I think that's pretty clear, right? Well, Your Honor, I think the courts have recognized that Section 881 and the broad language it uses there is inherently open to the board's interpretation. What exactly does it mean to coerce? What exactly does it mean to interfere? That's a clear delegation of interpretive authority to the board. But I guess all I can say is that the lines of precedent that we cite here are clearly established, where you have an employer making a public threat, for example, in a press release that is viewed by employees as well as members of the public. There's no distinct rule that would apply there. Certainly, we have communications on the Internet here. But that doesn't mean that the board is creating a new rule as the court recognized. It's new terrain, though, falling up, right? It's one thing I'm wrestling with in this case is this whole concept of use of the Internet. Electronic communication sort of puts us in a different realm than the decades upon decades of in-person communication that would occur at a company, doesn't it? I think the Internet certainly raises potential factual distinctions in certain areas. Those distinctions weren't raised in a meaningful way before the board, which is why we argued that Section 10E prohibits the court from considering many of amici's arguments. But beyond that, Your Honor, I think cases like- But didn't they say they didn't argue that this was a joke? The tweet was a joke? They certainly argued that it was a joke. That was, I think, their primary argument. Yeah, so, I mean, we've got First Amendment concerns here with the use of social media that we didn't have in the olden days, if I can call them that, right? So aren't we sort of – I guess what I'm asking is are we plowing new ground here or are there a whole bunch of cases like this out there? Or is this case a one-off? Your Honor, I would not say that this is plowing new ground. I would say that in cases like extreme associates where this court was dealing with the question of whether Supreme Court precedent remains binding where obscenity was distributed over the Internet, the court recognized that the mere fact – mere fact was the court's language – the mere fact that this occurred over the Internet doesn't invalidate, doesn't require- Well, but that's because obscenity is obscenity whether it's on a picture or over the Internet. I don't think that helps what I'm driving at here. What I'm getting to is isn't there something qualitatively different about social media and the way people communicate that we're plowing new factual ground here? We're in a new area, and the Board has much more difficult decisions to make when trying to ascertain whether something that someone posts on Instagram or Facebook or sends a tweet is actually a threat, i.e., illegal, or a joke or a passing remark that is not worthy of investigation or sanction by the NLRB. And, Your Honor, to the extent that there are new factual arguments that can be raised based on the medium, what we're left with is this court's precedent very clearly stating that the finding of a threat, the tendency of a statement to coerce, is a factual finding, which the Board is in the best position to evaluate based on the arguments that are presented to it. Right, but the Board has to evaluate it in context, taking all facts and circumstances in consideration when deciding whether it is a threat, correct? The Board has to consider all relevant circumstances that are presented to it. And the relevant circumstances here, let's try to nail those down. Let's see if there's agreement between both sides on that. Is a relevant circumstance the size of the company? I'm not aware of any case suggesting that it is. Okay. Is it relevant that there was no evidence of labor strife at the company before the tweet was made? I would say, Your Honor, that the case is the Board in a context where an employer has already committed other unfair labor practices as part of foregoing labor strife. I think the Board does take that into account if that fact is presented to the Board in potentially coloring the interpretation that a reasonable employee might give. Is the medium a relevant fact? I think to the extent that the medium could be a relevant fact, it was argued before the Board, and it's addressed at footnote 4, that the fact that it was made on Twitter makes it difficult to tell who the employer intended to communicate with. And the Board responded to that by noting, first of all, that the language of the tweet made it clear that it was directed at employees, which are the only people who could be fired for unionizing or discriminated against for unionizing, and also that under longstanding precedent, the intent, again, does not matter. I don't know if that answers Your Honor's question. I'm not sure. And you say the actual perception of employees is not relevant. That's inappropriate to consider. That is what this Court has said again and again and what the Board has always said. If the Court has no further questions, we would simply ask for enforcement of the Board's order in full. Thank you very much, Mr. Jost. We'll hear the rebuttal from Mr. McClain. Thank you, Your Honors. Not to belabor the jurisdictional point, but one brief thing before I get back to the First Amendment. The statute includes a requirement that there be a charge filed. That is a limitation on the authority of the Board. That limitation would not mean anything if just any person could file a charge. But even if any person could file a charge, we know from Lexmark, which interpreted a statute that included any person language, that any person still should be defined statutorily to fall within the zone of interest inquiry. And I'll leave the jurisdictional points at that and get back to the lack of evidence in this case. There are six employees of Federalist Media. The stipulation, which is the sole evidence that the Board says that they relied on, only says that one employee viewed the tweet. So we've stipulated that at least one employee read the tweet. At least two employees have filed affidavits. They filed an amicus brief below, they filed an amicus brief here, saying that they viewed the tweet as a joke and thought it was funny. What case law supports the notion that their subjective interpretation is relevant? Their subjective interpretation is part of the context, because in Gizzle Packing, you looked at the particular employee-employer relationship to know how an objective employee at that company might feel. And this Court's decisions in Gary Manufacturing said, in the context of the election campaign that was going on, it was clear how an employee might find that. In Hellstrom, they said, speech that occurred during a discussion of union activities in the context of an employer who had previously made threats against the union. In Stein Steel, there was testimony from employees who said they feel threatened, that the fact finder below had credited as believing that those employees felt threatened. And so while you're looking at an objective standard of how an objective person might receive this speech, you're looking at it in the context of the specific employer-employee relationship, and you had a colloquy with counsel about whether they could get deference on what a threat means. And they don't get deference, because in Gizzle Packing, they said that the NLRA extends as far as the First Amendment, and in order to survive First Amendment scrutiny, you need to look at the context of the particular employee relationship. And in Gizzle Packing, I'll note, too, that the Supreme Court said the board rules at that time required the board to consider the motive of the speaker and the intent of the speaker and how it might fall on the ears. So applying the standard from Gizzle Packing is applying the First Amendment, and there's no room for the board to expand on what the Supreme Court said in Gizzle Packing and then come to this court and ask for deference. I see I'm out of time, if Your Honors have any other questions. Thank you, Mr. McClain. Thank you, Mr. Jost. Thank you, Your Honors. The court will take the matter under advisement. Thank you.